1  ANDRÉ BIROTTE, JR.
   United States Attorney
2  GEORGE S. CARDONA (Cal. Bar. No. 135439)
   Chief Assistant United States Attorney
3  ROBERT E. DUGDALE (Cal. Bar. No. 167258)
   Assistant United States Attorney
4  Chief, Criminal Division
        1200 United States Courthouse
5       312 North Spring Street
        Los Angeles, California 90012
6       Telephone:  (213) 894-4685
        Facsimile:  (213) 894-0141
7       Email:     george.s.cardona@usdoj.gov
                   robert.dugdale@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10
                 UNITED STATES DISTRICT COURT
11
          FOR THE CENTRAL DISTRICT OF CALIFORNIA
12
                      WESTERN DIVISION
13

14 UNITED STATES OF AMERICA,      )  Case No. CR 11-1238-JSL
                                  )
15          Plaintiff,            )  **GOVERNMENT'S MOTION TO RECUSE THE**
                                  )  **HON. J. SPENCER LETTS UNDER**
16          v.                    )  **28 U.S.C. § 455;**
                                  )  **MEMORANDUM OF POINTS AND**
17 SAUL PEREZ, et al.,            )  **AUTHORITIES; DECLARATION OF**
                                  )  **ASSISTANT UNITED STATES ATTORNEY**
18          Defendants.           )  **JOSHUA A. KLEIN; EXHIBITS**
                                  )
19                                )
                                  )  [REDACTED - PUBLICLY FILED VERSION]
20                                )
                                  )
21 _____ )

22      Plaintiff, the United States of America, pursuant to 28

23 U.S.C. § 455, respectfully files this motion to recuse the

24 Honorable J. Spencer Letts, United States District Judge, from

25 this case.  The government takes this action only after

26 concluding that it is required by the interests of justice to

27 ensure compliance with the law.  As required by applicable

28 regulations, the filing of this motion to recuse has been

approved by the Assistant Attorney General for the Criminal
Division and by the United States Attorney for the Central
District of California.  <u>See</u> 28 C.F.R. § 50.19(a),(b).

This Court's General Order 08-05 § 10.0 requires that this
motion be assigned to a different judge.  <u>See</u> <u>id.</u> ("If a motion
is made to disqualify a judge in any criminal case, the motion
shall be referred to the Clerk for random assignment to another
judge.").  Because trial in this case is currently set for April
24, 2012, the government requests that the reassignment occur as
soon as possible.  Counsel for defendants Perez, Escobedo, Treto,
and Felix-Echavarria have been notified of this motion, and have
informed the government that they do not oppose this motion.

In support of this motion, the government relies on the
attached Memorandum of Points and Authorities; the attached
Declaration of Assistant United States Attorney Joshua A. Klein
and its attached exhibits; the transcripts, files, and records in
this case; and such further evidence and arguments as may be

1  presented at any hearing conducted by the judge to whom this

2  motion is assigned.[1]

3

4  Dated: April 11, 2012.

5                              Respectfully submitted,

6                              ANDRÉ BIROTTE JR.
                               United States Attorney
7

8                              GEORGE S. CARDONA
9                              Chief Assistant United States Attorney

10

11                             ROBERT E. DUGDALE
                               Assistant United States Attorney
12                             Chief, Criminal Division

13                             Attorneys for Plaintiff
                               UNITED STATES OF AMERICA
14

15

16

17

18

19

20

21

22

23        [1]Because Judge Letts has sua sponte sealed the transcripts of two
     of the hearings to which the memorandum in support of this motion
24   refers, the government is submitting two versions of this motion.  An
     unredacted version of the motion, together with all exhibits, is being
25   submitted to the Court pursuant to an ex parte application to file
     under seal.  A redacted version of the motion, which removes reference
26   to the sealed hearings and does not include those hearings'
     transcripts (Exhibit A and Exhibit B) will be filed electronically on
27   the public docket.  The government and the defendants have no
     objection to the entire, unredacted motion, with all its exhibits,
28   being filed on the public docket, should this be deemed appropriate by
     the Judge to whom this motion is assigned.

                                      3

## MEMORANDUM OF POINTS AND AUTHORITIES

### TABLE OF CONTENTS

                                                                    PAGE

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND  . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        1.   The January 10 Conference . . . . . . . . . . . . . 3

        2.   The January 27 Conference . . . . . . . . . . . . . 4

        3.   Defendant Treto's Plea Attempt  . . . . . . . . . . 6

        4.   The March 1 Conference  . . . . . . . . . . . . . . 11

        5.   Later Proceedings . . . . . . . . . . . . . . . . . 13

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

I.      JUDGE LETTS' ATTEMPTS TO INFLUENCE PLEA NEGOTIATIONS
        VIOLATE RULE 11 AND CREATE AN APPEARANCE OF BIAS
        AND PREJUDICE . . . . . . . . . . . . . . . . . . . . . 15

        A.   Judge Letts Violated Rule 11 by Placing Rules on
             Potential Plea Agreements Both Before and After There
             Was an Agreement Before Him for Consideration . . . 15

        B.   The Judge's Improper Pressure To Settle on his Terms
             Makes it Impossible for him To Preside Impartially   21

             1. Pressure Against the Government  . . . . . . . . 21

             2. Pressure Against Defendants  . . . . . . . . . . 23

             3. The Need for Recusal . . . . . . . . . . . . . . 26

II.     THE RISK OF PREJUDICE IS INCREASED BY THE JUDGE'S SECRET,
        IN CAMERA HEARINGS, HIS VOCAL DISREGARD FOR NINTH CIRCUIT
        CONTROL, AND HIS INSISTENCE ON EX PARTE CONTACTS . . . . 29

III. RECUSAL IS THE BEST SOLUTION . . . . . . . . . . . . . . 35

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . 37

i

1
## TABLE OF AUTHORITIES

2
**FEDERAL CASES**                                                          **PAGE(S)**

3
In re Boston's Children First,
      244 F.3d 164 (1st Cir. 2001) ........................... 35
4
California Medical Association v. Shalala,
5
      207 F.3d 575 (9th Cir. 2000) ........................... 28
6
Edgar v. K.L.,
      93 F.3d 256 (7th Cir. 1996) ............................ 29
7
FTC v. Enforma Natural Products, Inc.,
8
      362 F.3d 1204 (9th Cir. 2004) .......................... 30
9
Garcia-Aguilar v. U.S. District Court,
      535 F.3d 1021 (9th Cir. 2008) .......................... 20
10
Gillen v. Gates,
11
      1995 WL 329610 (9th Cir. 1995) ......................... 28
12
Globe Newspaper Co. v. Superior Court,
      457 U.S. 596 (1982) .................................... 30
13
Liljeberg v. Health Services Acquisition Corp.,
14
      486 U.S. 847 (1988) .................................... 36
15
Liteky v. United States,
      510 U.S. 540 (1994) ................................ 14, 35
16
Montiel v. Los Angeles,
17
      2 F.3d 335 (9th Cir. 1993) ......................... 25, 29
18
Nichols v. Alley,
      71 F.3d 347 (10th Cir. 1995) ....................... 14, 36
19
Padilla v. Kentucky,
20
      130 S. Ct. 1473 (2010) ................................. 20
21
Panama v. American Tobacco Co., Inc.,
      217 F.3d 343 (5th Cir. 2000) ........................... 14
22
Pashaian v. Eccelston Prop., Ltd.,
23
      88 F.3d 77 (2d Cir. 1996) .............................. 26
24
Preston v. United States,
      923 F.2d 731 (9th Cir. 1991) ........................... 14
25
In re United States,
26
      158 F.3d 26 (1st Cir. 1998) ........................ 14, 35

27

28
                                    ii

*In re United States,*
    572 F.3d 301 (7th Cir. 2009) ..................... 22, 23

*United States v. Anderson,*
    993 F.2d 1435 (9th Cir. 1993) ......................... 17

*United States v. Baker,*
    489 F.3d 366 (D.C. Cir. 2007) ......................... 19

*United States v. Barrett,*
    982 F.2d 193 (6th Cir. 1992) ....................... 27, 28

*United States v. Bradley,*
    455 F.3d 453 (4th Cir. 2006) ....................... 19, 28

*United States v. Bruce,*
    976 F.2d 552 (9th Cir. 1992) .............. 15, 25, 26, 27

*United States v. Cano-Varela,*
    497 F.3d 1122 (10th Cir. 2007) ........................ 28

*United States v. Corbitt,*
    996 F.2d 1132 (11th Cir. 1993) ........................ 28

*United States v. Furst,*
    886 F.2d 558 (3d Cir. 1989) ........................... 26

*United States v. Garfield,*
    987 F.2d 1424 (9th Cir. 1993) ..................... 15, 26

*United States v. Guzman,*
    No. CR 12-172-JSL (C.D. Cal.) ......................... 23

*United States v. Hyde,*
    520 U.S. 670 (1997) ................................... 17

*United States v. Isaacs,*
    2008 WL 4346780 (C.D. Cal. Sep. 19, 2008) ............. 35

*United States v. Jordan,*
    49 F.3d 152 (5th Cir. 1995) ........................... 14

*United States v. Kelly,*
    1993 WL 539266 (9th Cir. 1993) ........................ 28

*United States v. Kraus,*
    137 F.3d 447 (7th Cir. 1998) .............. 18, 19, 30, 31

*United States v. Langmade,*
    125 F. Supp. 2d 373 (D. Minn. 2001) ................... 27

iii

United States v. Levy,
    390 F. App'x 726 (9th Cir. 2010) ...................... 30

United States v. Maxwell,
    368 F.2d 735 (9th Cir. 1966) ......................... 18

United States v. Miles,
    10 F.3d 1135 (5th Cir. 1993) ...................... 26, 28

United States v. Navarro-Botello,
    912 F.2d 318 (9th Cir. 1990) ......................... 20

United States v. Patti,
    337 F.3d 1317 (11th Cir. 2003) ................... 14, 35

United States v. Savage,
    978 F.2d 1136 (9th Cir. 1992) ........................ 18

United States v. Snyder,
    235 F.3d 42 (1st Cir. 2000) .......................... 27

United States v. Whitman,
    209 F.3d 619 (6th Cir. 2000) ......................... 36

United States v. York,
    274 F. Supp. 2d 1347 (M.D. Ga. 2003) ................. 19

852152 Ontario, Inc. v. Dollar System, Inc.,
    1994 WL 88784 (9th Cir. 1994) ....................... 28

**STATUTES AND RULES**

18 U.S.C. § 3553 ........................................ 16

21 U.S.C. § 841 ......................................... 5

21 U.S.C. § 846 ......................................... 9

28 U.S.C. § 455 ............................... 1, 14, 35, 36

Fed. R. Crim. P. 11 ................................. passim

**MISCELLANEOUS**

Br. of United States in United States v. Levy,
    No. 09-50656 (9th Cir.), available at 2010 WL 5857467 ....... 30

Br. of Def.-App. in United States v. Levy,
    No. 09-50656 (9th Cir.), available at 2010 WL 5857467 ........ 30

Calif. R. of Professional Conduct 5-300 ...................... 31

Fed R. Crim. P. 11 advisory committee notes .................. 17

H.R. Rep. 93-1453, 1974 U.S.C.C.A.N. 6351, 6355 ............. 36

Ninth Circuit Local Rule 36-3 ............................... 29

Wright & Leipold, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL
        (4th ed. 2008) ....................................... 18

**INTRODUCTION**

A federal judge may not hear "any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  The government does not lightly conclude that this standard for recusal has been met.  In this case, however, based on the facts discussed in detail below, the government reluctantly has concluded that this standard is satisfied, and that Judge Letts should be recused.

Judge Letts has violated Fed. R. Crim. P. 11 by inserting himself into the parties' plea negotiations, pressuring the government to make a plea offer that would allow him to impose his chosen sentence in disregard of applicable mandatory minimums, commenting categorically that certain plea agreement provisions will not be acceptable, refusing to set a trial date when he thinks the parties' settlement discussions have been insufficient, and effectively prohibiting a defendant from willingly accepting a plea offer that would be advantageous.  In doing so, he has made comments indicating that he has prejudged key issues long before those issues were presented for decision. He has insisted on improper ex parte communications through his courthouse staff.  He has warned that he will drag out proceedings if he does not get his way.  Through it all, he has stated that he is the law, and has indicated he will not let himself be constrained by binding authorities or higher courts.

As a result, a knowledgeable observer would reasonably question Judge Letts' ability to be fair in this case.  To preserve the parties' rights to a fair proceeding, and to

1

1  preserve public confidence in the judiciary, Judge Letts should

2  be recused.

3                              **BACKGROUND**

4       This case concerns 14,000 kilograms of marijuana that were

5  intercepted in the City of Industry after being smuggled into

6  this country through a sophisticated cross-border tunnel.  There

7  are four defendants – one (Perez) who took over driving duties

8  when the marijuana-filled tractor-trailer truck was near the end

9  of its journey just blocks from its destination, and three others

10 who unloaded the truck at the warehouse where it arrived.  <u>See</u>

11 Compl. (Dkt. No. 1).  The defendants first appeared in court on

12 November 30, 2011.  (Dkt. Nos. 7, 11, 15, 23).  Anticipating plea

13 negotiations, the defendants waived preliminary hearing and

14 indictment, and a one-count Information was filed charging them

15 with conspiracy to distribute over 1,000 kilograms of marijuana.

16 (Dkt. Nos. 9, 13, 17, 36, 40, 47-50).  At arraignment on January

17 3, 2012, the case was assigned to the Honorable J. Spencer Letts.

18 (Dkt. No. 58).  Judge Letts convened several "informal" status

19 conferences, held mostly in chambers and mostly without the

20 defendants present, which he characterized as ████████████

21 ████████████████████.[2]  During these status conferences, he made

22 the statements giving rise to this motion.

23

24 ──────────────

25 ████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████████

**1.  *The January 10 Conference.*** The first Informal Status Conference was on January 10, 2012.  No plea agreements had yet been filed.  When the parties assembled in the courtroom, Judge Letts made an unrecorded speech to the defendants, then announced that he wanted to continue the meeting in chambers.  Klein Decl. ¶ 2.  Counsel reconvened in chambers, without the defendants.  Id.

The next day, the Judge directed the parties to "discuss certain matters" (Dkt. No. 59), and <u>sua</u> <u>sponte</u> sealed the January 10 transcript.  (Dkt. No. 60).

    *2.   **The January 27 Conference.***  The second hearing was on January 27.

4



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15  Once again, the Judge sealed the
16  transcript without giving a reason. (Dkt. No. 68).

17      ***3.  Defendant Treto's Plea Attempt***.  On February 12, the
18  government filed a plea agreement with defendant Treto.  (Dkt.
19  No. 69) (attached as Ex. E).  The change of plea hearing was set
20  for February 22.  (Dkt. No. 71).  The agreement contained several
21  provisions that are common in most of the agreements entered in
22  this district, including notice of the applicable maximum and
23  minimum penalties and a limited mutual waiver of appeal.  Klein
24  Decl. ¶ 4.

25      Before hearing from the Judge about the agreement, the
26  government heard from the Judge's staff.  Id. ¶¶ 5-8.  Judge
27  Letts' courtroom deputy clerk, Nancy Webb, told AUSA Joshua
28  Klein, by phone, that Judge Letts would not like the agreement's

6

appeal waiver and reference to the mandatory minimum sentence; she urged AUSA Klein to contact another AUSA, Debra Herzog, who had recently deleted provisions from a plea agreement at the Judge's request.  Id. ¶ 5.  When defendant Treto, his lawyer, and the prosecutors gathered in the courtroom for the change-of-plea hearing, the Judge's law clerks, off-the-record, identified several provisions that they said the Judge would have problems with.  Id. ¶ 7.  Then Judge Letts addressed counsel in chambers, without defendant Treto.  (Dkt. No. 76).

The Judge stated with respect to the agreement, "I am shocked that it was even tendered.  Shocked."  2/22 Tr. 3.  He expressed his view that the government should have withdrawn the agreement after the courtroom clerk's and law clerks' criticisms: "[B]oth my clerks are sitting here, Mrs. Web[b] is sitting here. I thought it was already clear that this agreement was going to have to change."  Id. at 5; see also id. at 3 (complaining AUSA had "ignore[d] what we told you").  He told the AUSA to "[m]ake sure everybody knows" how he operates – "if [you] get an indication from her" (his clerk) that the Judge would object to a filing, then the filing should be changed.  Id. at 21-22.[13]

Judge Letts said his comments at earlier hearings in the case were meant to make clear that any plea agreement should not include the 10-year mandatory minimum sentence: "They're saying

---

[13]See id. at 22 (under his "working arrangement" which they've "had forever," the deputy's role was to "go out there and say you're not going to want to say that to him"); id. ("If she says something like that, are you really going to walk in with that same agreement expecting me to sign it?"); id. ("There's nobody here that really does[n't] think that anything that they hear from her didn't come from me.").  (Because of a reporter's error, the transcript has the word "does" instead of "doesn't" in the last of these.)

that you contemplated that I would sentence him to ten years.  If you did, then I don't understand how it got to that because we've had conversations about that."  Id. at 6.

Judge Letts stated several times that he would sanction any AUSA who filed a similar agreement.  See id. at 7 ("The next person that brings one that looks like this in here will get sanctioned."); id. at 51 ("I will start sanctioning people."); id. at 5; id. at 27; id. at 58.  He said the government should not tender similar agreements for the other defendants in this case,[14] or for any defendant in any case: "I am going to reject it a hundred times."  Id. at 7.

Trying to avoid future sanctions, the AUSA asked for warning of what would be sanctionable in the future.  Id. at 27-28.  In response, Judge Letts and his law clerk went through the agreement.  The court first complained about Paragraph 3(e), in which the government agreed to "[r]ecommend that the defendant be sentenced to a term of imprisonment no higher than the low end of the Guidelines range, provided that the offense level is 23 or higher and provided that the Court does not depart downward in offense level or criminal history category."  Ex. E, ¶ 3(e).  Although this provision restricted the government's allocution, the Judge implied that he wanted the government to agree in advance to recommend a guideline departure, and hence did not

_____

[14]Id. at 6 ("[I]f you are tendering this kind of agreement to anybody else in this case, remember what judge you had.").  Once, the Judge tried to reassure the AUSA that he would not be sanctioned, id. at 33; however, this was surrounded by other warnings that he could be sanctioned, e.g., id. at 48.  The Judge also occasionally tried to make comments off the record.  Id. at 34, 58.  Each time, the government insisted that the case could not be discussed off the record, which led the Judge to say that what he had been trying to say off the record was that he still "liked" the AUSA.  Id.

1  want the government to retain the ability to request a sentence
2  above the low-point if the Court did depart: "The departure is
3  going to be valid, it's valid now if it's consistent with the
4  recommendation."  2/22 Tr. 31; id. at 32 ("I'll depart.  You can
5  count on that. . . . If I follow your recommendation I will
6  depart.").

7      Next, the court criticized Paragraph 7, which implemented
8  Rule 11(b)(1)(I) by informing the defendant of the statutory
9  minimum penalty of 120 months.[15]  2/22 Tr. 35-39.  Again, the
10 court's criticism presupposed that the government should agree in
11 advance to recommend a sentence below the statutory minimum.[16]

12     The court also objected to Paragraph 11, which warned about
13 immigration consequences, and contained an agreement that such
14 consequences would not be grounds to withdraw the plea.[17]

15 _____

16 [15]See Ex. E, ¶ 7:
17         Defendant understands that the statutory mandatory
           minimum sentence that the Court must impose for a
           violation of Title 21, United States Code, Section
18         846, in this case, is: ten years' imprisonment,
           followed by a five-year period of supervised release,
19         and a mandatory special assessment of $100.

20 [16]Id. at 36 ("this statement . . . will not be applicable if the
21 Court follows the [government's] recommendation").

22 [17]See Ex. E, ¶ 11:
23         Defendant understands that, if defendant is not a
           United States citizen, the felony conviction in this
           case may subject defendant to: removal, also known as
24         deportation, which may, under some circumstances, be
           mandatory; denial of citizenship; and denial of
25         admission to the United States in the future.  The
           court cannot, and defendant's attorney also may not be
26         able to, advise defendant fully regarding the
           immigration consequences of the felony conviction in
27         this case.  Defendant understands that unexpected
           immigration consequences will not serve as grounds to
28         withdraw defendant's guilty plea.
   See 2/22 Tr. at 40 ("I'm just not going to accept that"); id. at 42
   ("I will not sign it. . . . This country is not the 13 colonies.").

1    Finally, the court objected that, although the government

2 gave up certain appellate rights regarding sentencing in return

3 for a similar waiver by the defendant, the government also (like

4 the defense) retained limited appellate rights.[18]  When the law

5 clerk mentioned an objection to "the Government's agreement

6 regarding when they have the right to appeal the sentence," id.

7 at 46, Judge Letts explained:

8            [Y]ou're saying that if he doesn't get the

9            mandatory minimum, you're going to appeal it, or

10           you will have the right to appeal it, without

11           having anybody prepared to tell me what the

12           appellate issue could be if all I did was [follow]

13           the recommendation that you were going to make,

14           and I'm just not going to do it.

15 Id. at 47.[19]  See also id. at 39 (implying the government should

16 "agree not to" appeal the sentence).

17    Saying he would not "sign unless somebody makes me", Judge

18 Letts said he had "made clear the changes [that] would have to be

19 made." Id. at 57.  Afterwards, the court sua sponte vacated the

20 trial date for all parties.  (Dkt. No. 76).

21

22

23    [18]This provision was found in the section titled LIMITED MUTUAL WAIVER

24 OF APPEAL OF SENTENCE.  See Ex. E, ¶ 21:
         The USAO [(United States Attorney's Office)] agrees

25       that, provided (a) all portions of the sentence are at
         or above the statutory minimum and at or below the

26       statutory maximum specified above and (b) the Court
         imposes a term of imprisonment of no less than 120

27       months, the USAO gives up its right to appeal any
         portion of the sentence.

28
      [19]The Judge said he had objected "every time" he had seen such a
   provision, expect possibly once.  Id. at 48.

                                   10

**4.  *The March 1 Conference*.**  Judge Letts held another conference on March 1. ▊, he urged the parties to reach a deal,[20] including a <u>nolo</u> <u>contendere</u> plea if the parties would agree to it and forego appeals.[21]  He ▊ encouraged the parties to focus on sentencing.[22]  And he speculated that Perez should get a harsher deal than the other defendants.[23]

Towards the end, the Judge stated that he would "remember" it if the government's plea position made trial necessary:

> If the Government . . . makes it impossible to do anything except spend money on these guys in this case, <u>I can't imagine not remembering that</u> . . . . What I would do as a result, I don't have any idea.  But if you never tell me what's special about these guys and why it's really important that you don't let any of these guys get away with anything . . . [o]f course, <u>I'll remember that</u>.

3/1 Tr. 58 (emphasis added).  Judge Letts questioned the government's interest in the case:

---

[20]<u>See</u> 3/1 Tr. 16 ("If this is a case, as it appears to be, that there is none of these other things in it, you can just deal with it and dispose of it, then let's do it and go home.  And it's going to be a lot easier if we can do that.").

[21]<u>See</u> <u>id.</u> at 10 ("It is not impossible to make a plea agreement without admitting guilt"; "I've encouraged it to be done in my cases"; "If nobody is going to appeal it, that's the end of it.").

[22]<u>See</u> <u>id.</u> at 37 ("Your case is about sentencing. . . . It is not about guilt or innocence . . . . ").

[23]<u>See</u> <u>id.</u> at 32 (saying "from the very first day I saw this case," he "was at least skeptical that the driver was going to get the same deal that everybody else was"); <u>id.</u> at 33 (because the driver would probably be paid "more money" than the other defendants, the Judge was "a little bit surprised at the assumption that they will get equal treatment" from the government).

11

1    Tell me . . . why is it a national disaster if any
2    of these guys just get away and run away? . . .
3    Oh, well, I didn't get him.  The guy escaped. . .
4    What is so important about this case against these
5    guys?

6  3/1 Tr. 67.[24]  Judge Letts then stated that if the AUSA would not
7  tell him why this case was so important to prosecute, then he
8  might summon the U.S. Attorney and the Attorney General to court.
9  Id. at 69 ("let me talk to Andre [Birotte] tomorrow . . . and I
10 may get Eric Holder here, too.").

11     Judge Letts ███████████████████████ that it was he who
12 made the law, and that reversals were unimportant.[25]  He said
13 that "this case will last years if it doesn't get cleaned up by
14 you guys," id. at 75, but said that if the case were handled
15 "right today" then it could just be "done," id. at 76.  He
16 wondered whether to convene a three-judge court and solicit amici
17 curiae.  Id. at 20.

18     Stating that a "disposition of this case . . . would be [to]
19 everybody's benefit," Judge Letts urged the parties to work on
20 that rather than prepare for trial.  Id. at 71.  Over objection,
21 he refused to set a trial date.[26]  Dismayed that "[s]omehow

22 ─────────────

23    [24]See also id. at 57-58 ("Right now I don't see anything in this
   case that thinks that [if] any one of these four guys just plain got
24 away with it, that there would be a great miscarriage of justice.");
   id. at 68 ("[W]hy do you have to get these guys – [it] escapes me.").
25
   [25]See id. at 70 ("[Y]our job is to deal with these people
26 according to the law.  Who makes the law?  Me.  Appeal it, then you
   win.  I'll be gone.  I don't care.").
27
   [26]Id. at 59-64; id. at 63 (refusing to set trial date, because
28 "nobody has told me what you're going to defend yourself with"); id.
   at 62 (Defense Counsel: "I am concerned about the Speedy Trial Act";
   Court: "I don't care").  The Judge also refused to set a date for

you're missing the message," Judge Letts "beg[ged]" for a plea
deal to let the defendants "off the hook":

> I'm begging . . . see if you can do some sort of –
> some form of justice that takes these people off
> the hook and let[s] them be in a position that
> everybody can feel reasonably good about what
> happened to them.  Just please do that . . . .

3/1 Tr. 81.

   **5.  *Later Proceedings.***  The Court eventually set a trial
date of April 24, 2012.  (Dkt. No. 89).  On March 30, the Judge
emailed all counsel, saying that "[b]ased on our meetings and my
review of the transcripts[,] it seems that this case should have
been disposed of by now.  Therefore, it is my first priority to
set a meeting with all parties and clients as soon as possible."
See Ex. F.  Judge Letts also followed up on his courtroom clerk's
earlier advice that AUSA Klein should talk with the AUSA who had
once removed a plea agreement provision at Judge Letts' request.
See p. 6, supra.  On April 2, 2012, the deputy clerk placed a
call from Judge Letts to AUSA Herzog.  Klein Decl. ¶ 10.  During
the call, Judge Letts made various statements about criminal
cases (including his complaint that cooperation agreements are
all illegal), and implied that he wanted to speak with AUSA

_____

expert disclosure.  Id. at 47-48.  Although Judge Letts previously had
███████████████████████████████████████████████████████████████
███████████████      ently because it did not change negotiating positions,
see 3/1 Tr. 45, 50 (complaining viewing had not made either side say
"I think our case may be a little weaker").

13

1  Herzog the next day about the conversation she had with AUSA

2  Klein.  Id.[27]

3                           **ARGUMENT**

4       A federal judge must not hear "any proceeding in which his

5  impartiality might reasonably be questioned."  28 U.S.C.

6  § 455(a).  A judge should be disqualified if "'a reasonable

7  person with knowledge of all the facts would conclude that the

8  judge's impartiality might reasonably be questioned.'"  Preston

9  v. United States, 923 F.2d 731, 734 (9th Cir. 1991).  The

10 possible appearance of partiality requires recusal, even if the

11 judge has "'no actual bias.'"  United States v. Jordan, 49 F.3d

12 152, 157 (5th Cir. 1995).  The statute is purposefully

13 overprotective: "any doubts must be resolved in favor of

14 recusal."  United States v. Patti, 337 F.3d 1317, 1321 (11th Cir.

15 2003).[28]

16      The government does not often seek a district judge's

17 recusal, and has given this matter extensive consideration.

18 Judge Letts' conduct in this case, however, has left the

19 government no option but to file this motion to recuse.  Judge

20 Letts has violated Rule 11's proscription on judicial involvement

21

22      [27]The government has informed defense counsel of this ex parte
   communication and of those before the February 22 hearing.  See
23 p. 6, supra.

24      [28]See also In re United States, 158 F.3d 26, 30 (1st Cir. 1998)
   ("doubts ordinarily ought to be resolved in favor of recusal"); Panama
25 v. Am. Tobacco Co., Inc., 217 F.3d 343, 347 (5th Cir. 2000) (if
   question is close, "the balance tips in favor of recusal"); Nichols v.
26 Alley, 71 F.3d 347, 352 (10th Cir. 1995).  Although cases once spoke
   of a so-called "extrajudicial source" rule, under which recusal could
27 be predicated only on actions or information outside the proceedings
   of the case itself, the Supreme Court has clarified that there is no
28 such rule – the extrajudicial nature of the judge's actions or
   information is simply a factor in the analysis.  Liteky v. United
   States, 510 U.S. 540, 555 (1994).

                                14

in plea bargaining, to the prejudice of both the government and defendants.  In doing so, he has expressed views indicating that he has prejudged issues in this case.  He has insisted that the parties pre-clear filings through ex parte contacts with his staff.  He has said, both implicitly and explicitly, that he is the law and that he will not conform his conduct to the edicts of higher courts.  As a result, Judge Letts' "impartiality might reasonably be questioned" and he must be disqualified from this case.

## I.   JUDGE LETTS' ATTEMPTS TO INFLUENCE PLEA NEGOTIATIONS VIOLATE RULE 11 AND CREATE AN APPEARANCE OF BIAS AND PREJUDICE

Rule 11(c)(1) of the Federal Rules of Criminal Procedure commands that "[t]he court must not participate" in the parties' negotiation of a plea agreement.  This edict demands "strict compliance" – it is a "'bright-line rule' prohibiting 'all forms of judicial participation' before the parties have reached a plea agreement and disclosed the final agreement in open court." United States v. Garfield, 987 F.2d 1424, 1426-27 (9th Cir. 1993).  Judge Letts has violated this rule.  He has pressured the government to change its plea position, and has implied that there will be consequences if he does not get what he wants.  He has tainted the proceedings, calling into question any subsequent plea, conviction, or sentence that might occur in his courtroom.

### A.   Judge Letts Violated Rule 11 by Placing Rules on Potential Plea Agreements Both Before and After There Was an Agreement Before Him for Consideration

"Before the parties have concluded a plea agreement and have disclosed that final agreement in open court, 'the judge must refrain from all forms of plea discussions.'" United States v.

15

1   <u>Bruce</u>, 976 F.2d 552, 555-56 (9th Cir. 1992) (emphasis in

2   original).  Violating this command, Judge Letts consistently told

3   the parties what he would or would not accept, well before

4   negotiations were concluded and before final agreements were

5   filed.

6

7

8

9

10

11

12

13   43.  He encouraged the parties to explore <u>nolo</u> <u>contendere</u>

14   agreements.  3/1 Tr. 10.  He pressured the government to change

15   the charge and theory of liability, urging the government to

16   treat defendants as having "aided and abetted" each other rather

17   than being "co-conspirators."  <u>Id.</u> at 16.  And he pressed the

18   government for an agreement that would both circumvent the

19   statutory minimum sentence and contain a government

20   _____

21   [29]Despite a statutory command that he must consider the Sentencing
     Guidelines for each defendant, 18 U.S.C. § 3553(a)(4), (5), the Judge

22   has already pronounced the Guidelines ████████████

23

24

25

26

27

28

16

1   recommendation to sentence below the advisory Guideline range.

2   See pp. 7-10, supra.

3        In United States v. Anderson, 993 F.2d 1435 (9th Cir. 1993),

4   the Ninth Circuit confronted a trial court that had similarly

5   inserted itself into the plea bargaining process, by trying to

6   control the charges to be included in the plea agreement. Id. at

7   1436.  The Court of Appeals found this behavior improper, because

8   "the court's prospective refusal to accept a plea to fewer than

9   the full thirty counts, and direction to the prosecutor not to

10  offer any such deal in the future, usurped the government's role

11  and made the judge a participant in the plea negotiation

12  process." Id. at 1439.

13       Judge Letts' activities in this case similarly violate Rule

14  11.  As in Anderson, Judge Letts addressed plea arrangements

15  "prospective[ly]," Anderson, 993 F.2d at 1439, that is, before

16  any particular agreement was before him. As in Anderson, Judge

17  Letts "direct[ed] the prosecutor not to offer" certain deals,

18  thus "usurp[ing] the government's role." Id.  And as in

19  Anderson, Judge Letts made himself "a participant in the plea

20  negotiation process." Id.  Indeed, Judge Letts' violations are

21  worse than those in Anderson.  The Anderson trial court was

22  addressing a hypothetical "Type A" plea agreement that would drop

23  charges in exchange for the plea – something the court would

24  eventually have had discretion to review and reject under Rule

25  11(c)(3)(A).[31]  Judge Letts has sought to control provisions in a

26

27       [31]Plea agreements with a dismissal of charges under Rule
    11(c)(1)(A) or a binding, specified sentence under Rule 11(c)(1)(C)
28  are commonly called Type A and Type C agreements.  See United States
    v. Hyde, 520 U.S. 670, 675 (1997); Fed. R. Crim. P. 11 advisory
    committee's notes.  For Type A and Type C agreements, Rule 11(c)(3)(A)

17

1  hypothetical "Type B" plea agreement, addressing ███████████

2  ███████████████████████████████████████████████████████████

3  ███████████████████████.  When and if those provisions were

4  incorporated into an agreement, Rule 11 would have given Judge

5  Letts little if any power over them – making his early,

6  categorical statements about the unacceptability of such

7  provisions all the more improper.[32]

8      When, after all this, Judge Letts finally had an actual plea

9  agreement (Treto's) before him, he compounded his Rule 11

10 violations.  Rather than "confine [his comments] to the

11 agreement" that was then "before [him]," United States v. Kraus,

12 137 F.3d 447, 453 (7th Cir. 1998), Judge Letts made broader,

13 categorical statements about what would or would not be

14 acceptable.[33]  As Kraus makes clear, "Rule 11 absolutely bars"

15 ─────────────────

16 gives the Court discretion to "accept the agreement, reject it, or
   defer a decision until the court has reviewed the presentence report."

17

18     [32]Notwithstanding general statements that courts have discretion
   to approve or reject plea agreements, see United States v. Savage, 978

19 F.2d 1136, 1137 (9th Cir. 1992), for so-called Type B agreements under
   Rule 11(c)(1)(B), Rule 11 gives the court no role in accepting or

20 rejecting the agreement.  Rather, for a Type B agreement, the court
   simply "advise[s] the defendant" that the Court may not follow the

21 parties' sentencing recommendations.  Fed. R. Crim. P. 11(c)(3)(B).
   "Because a Type B deal contemplates a recommendation only and does not

22 provide for any particular disposition, there is nothing about the
   plea bargain for the court to accept or reject."  Wright & Leipold, 1A

23 FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 180, at 306 (4th ed. 2008).  In
   discussing "discretion," Savage and related cases appear to have

24 relied on cases such as United States v. Maxwell, 368 F.2d 735, 738
   (9th Cir. 1966), which discussed a prior version of Rule 11 that has

25 now been superseded.

26     [33]It makes no difference that the government, when threatened with
   future sanctions, asked the Judge to point out the provisions that

27 offended him.  Having been told that not only he but all other AUSAs
   would be sanctioned for filing objectionable agreements in the future,

28 the prosecutor had little choice but to ask what the sanctionable
   parts were.  Moreover, even where "questions directed to the Court
   . . . served to elicit the improper response from the Court," the

1  discussion of such "hypothetical agreements," even where the

2  discussion comes after a concrete agreement has been rejected.

3  Id. at 454.[34]

4      Moreover, the provisions that drew Judge Letts' ire, see pp.

5  8-10, supra, were legally proper, and in some cases required.

6  The first provision to which he objected – Paragraph 3(e) – was

7  not a limitation of defendant's rights at all; rather, it was a

8  limited exception to an otherwise generous waiver of the

9  government's right to allocute.  Although the government agreed

10  not to seek a sentence above the low end of the guideline range,

11  this provision excepted the government from that restriction if

12  the Court had already departed downward.  Next, in objecting to

13  the agreement's warning about the potentially applicable

14  statutory minimum, Judge Letts was objecting to a warning that

15

16

17  "circuit courts have not attempted to draw a distinction between
   invited error and uninvited error in determining whether courts have
18  improperly injected themselves into the plea negotiation process."
   United States v. York, 274 F. Supp. 2d 1347, 1351 (M.D. Ga. 2003).
19  See, e.g., United States v. Bradley, 455 F.3d 453, 464-65 (4th Cir.
   2006).
20

21      [34]The fact that Judge Letts left open the possibility of an "open"
   plea, 3/1 Tr. 26 – that is, a plea to the charge, without any
22  agreement – erases neither the Rule 11 violation nor its harmful
   effects.  "Rule 11(c)(1) does not merely guard against judicial
23  participation in plea discussions when they result in a bargain; it
   also prohibits participation that effectively undermines the parties
24  reaching a bargain (or a better bargain)."  United States v. Baker,
   489 F.3d 366, 371 n.3 (D.C. Cir. 2007).  And even for an open plea,
25  the Judge intends to continue invading the negotiation process, by
   "[a]sk[ing] what the negotiations were."  3/1 Tr. 30; id. at 29
26  (implying if a party "plead[s] open," he should "tell me about what
   the Government – about what the negotiations were").  Given Judge
27  Letts' other statements, an observer could reasonably interpret this
   as showing the Judge's intention to hold the course of plea
28  negotiations against the government at sentencing, out of a belief
   that government intransigence forced an open plea rather than a
   negotiated plea in a form more to the Judge's liking.

1  Rule 11(b)(1)(I) <u>requires</u> at the plea hearing.[35]  Another
2  provision – which informed the defendant that conviction could
3  lead to immigration consequences and agreed that, in return for
4  the benefits of the agreement, the defendant could not withdraw
5  his plea based on immigration consequences – implements the
6  Supreme Court's recent decision in <u>Padilla v. Kentucky</u>, 130 S.Ct
7  1473 (2010).  Finally, Judge Letts disapproved of the limited
8  mutual waiver of appeal provision – an evenhanded provision that
9  let the defense appeal any sentence over the mandatory minimum,
10  and the government any sentence below it.  Such provisions are
11  generally acceptable under Ninth Circuit law.[36]  In any case,
12  Judge Letts did not object that the defendant's limited waiver of
13  appellate rights was unfair; rather, he complained because the
14  government's waiver in return was similarly limited rather than
15  total.  Judge Letts insisted that, as part of any agreement, the
16  government should "agree not to" appeal.  2/22 Tr. 39.

17       The February 22 hearing made plain Judge Letts' intent to
18  pressure the government into a plea offer that would (i) let the
19  Judge sentence below the mandatory minimum and below the
20  Guideline range; (ii) have the government recommend such a
21  sentence; and (iii) give up the government's right to appeal.

22

23       [35]<u>See</u> Rule 11(b)(1)(I) (before taking plea, Court must make sure
24  defendant understands "any mandatory minimum penalty").  This
    requirement exists even if some uncertain, exception might obviate the
25  mandatory minimum.  <u>Compare</u> <u>Garcia-Aguilar v. U.S. Dist. Court</u>, 535
    F.3d 1021, 1025 (9th Cir. 2008) (discussing Rule 11's similar
26  requirement that the court inform defendant of the statutory maximum
    penalty: "Rule 11(b)(1)(H) doesn't require judges to predict the
27  precise maximum penalty at sentencing." "Instead, the court need only
    tell defendants the maximum sentence that they could <u>possibly</u> face.").
28
         [36]<u>See</u>, <u>e.g.</u>, <u>United States v. Navarro-Botello</u>, 912 F.2d 318, 319
    (9th Cir. 1990).

                                    20

See pp. 8-10, supra.  The Judge sought to dictate the terms of the plea agreement both to permit him to impose the sentence he wanted and to shield that sentence from review.  See also Part III.C, infra.

**B.  The Judge's Improper Pressure To Settle on his Terms Makes it Impossible for him To Preside Impartially**

In ▓▓▓▓ hearing, Judge Letts has pressured the parties to settle this case.  See pp. ▓-12, supra.  His occasional claim to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[37] has done nothing to counteract the pressure he has clearly exerted.  "The loss of judicial integrity is particularly serious" when the judge "explicitly or implicitly advocates a particular bargain."  Bruce, 976 F.2d at 557.  Judge Letts' improper attempts to force the parties to settle on his terms raise serious doubts about his ability to remain impartial and require his recusal.

*1. Pressure Against the Government.*  Judge Letts' most serious pressure has been directed at the government.  He made repeated appeals to the government's conscience, going so far as to "beg[]" them to make an agreed-disposition possible.  See ▓p. ▓ 13, supra.  He told the government ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  And after he saw an agreement he did not like, he began ascribing sinister motives to the government.[38]

---

[37] . . . ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[38] See 3/1 Tr. 56 ("there's a hammer on these guys to see if they can't get to say things that are not true about other people"); id. at 37 ("you maximized the chance that you could bludgeon them"); id. at 12 ("I started thinking about Government tactics with which I'm very familiar, that they take years to penalties – you moot the question of guilt or innocence.").

1    Judge Letts increased the pressure by making clear he would
2    "remember" if the government's unwillingness to settle on his
3    terms resulted in trial: "If the Government . . . makes it
4    impossible to do anything except spend money on these guys in
5    this case," said Judge Letts, "I'll remember that."  3/1 Tr. 58.
6    He warned he might impose sanctions on the AUSA for filing a plea
7    agreement with commonplace provisions, or for filing any
8    agreement not adhering to the Judge's chosen form.  See p. 8,
9    supra.  He stated he might prolong the proceedings if no
10   settlement was reached.  See p. 32 & n.54, infra.

11   This requires recusal, as shown by In re United States, 572
12   F.3d 301 (7th Cir. 2009).  In that case, while the district judge
13   had the defendant's motion to suppress under advisement, he
14   called a meeting in chambers with the United States Attorney and
15   Federal Defender.  Id. at 304-05.  The judge said the case was a
16   waste of "taxpayer resources."  Id. at 312.  He made clear he
17   "sought to avoid a conviction" under a particular statute, so as
18   to "prevent imposition of the . . . mandatory minimum sentence."
19   Id.  Having "suggested that his pending ruling on the motions to
20   suppress would not satisfy either party," the judge "recommended"
21   that they "explore the possibility of resolving the case without
22   additional litigation."  Id. at 305.

23   The Court of Appeals granted mandamus and ordered the
24   judge's recusal, id. at 312, for reasons that apply equally to
25   Judge Letts' statements here.  In both cases, the judge tried to
26   force an agreement.  Both judges made clear they were seeking "to
27   prevent imposition of the . . . mandatory minimum sentence" that
28   would otherwise apply.  Id. at 312.  And both judges spoke "in

terms that a reasonable observer might well interpret as critical of the Government's position in the case." Id. at 311.  As the Seventh Circuit recognized, "[t]he judge who advocates a particular plea bargain may resent the government for disagreeing," id. – a concern made concrete here by Judge Letts' warning that he would "remember" it if the government made a trial necessary.  "In expressing those views and insisting that action be taken to conform the future course of litigation to those views," each judge "misapprehended the limits of his authority as the presiding judicial officer and undertook to participate in determinations that are in the proper domain of the Department of Justice."  Id. at 312.  In short, "a reasonable well-informed observer could question" Judge Letts' impartiality, concluding he "was no longer acting as a neutral arbiter, but was advocating for his desired result." Id. at 311.  Since Judge Letts' statements have placed his impartiality in question, recusal is required.  See p. 14 & n.28, supra.[39]

   **2.  *Pressure Against Defendants.***  In trying to force a settlement, Judge Letts also has improperly pressured the defendants.  Judge Letts has opined that the defendants are likely to be convicted at trial because the government rarely brings cases without the evidence to prove guilt.[40]  He has said

---

[39]Judge Letts' attempts to intervene in plea negotiations are also evidenced by another case, United States v. Guzman, No. CR. 12-172-JSL, where the Judge recently ordered the government to provide copies of plea offers before they had been signed or accepted by the defendants.  The transcript of the April 2, 2012, hearing containing this demand in Guzman will be furnished to the Court deciding this motion to recuse when the transcript is received.

[40]

23

1 ████████████████████████████████████████████████████████

2 ██████████████████████████████[41]   In his attempts to dictate the

3 parties' plea agreements, he has implied that he would welcome an

4 offer treating defendant Perez more harshly than the others.[42]

5 He has exposed defendant Treto to the risk of higher punishment

6 by refusing to allow an advantageous plea agreement that

7 defendant Treto, advised by counsel, wanted to enter.  See pp. 6-

8 10, supra.  He pressured defendant Felix-Echavarria's counsel

9 ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████   When the parties resisted his

13 attempt to force settlement, he sua sponte vacated the trial date

14 (Dkt No. 76) and refused for a while to set a new date.  See 3/1

15 Tr 59-64; id. at 62 (Defense Counsel: "I am concerned about the

16 Speedy Trial Act"; Court: "I don't care").

17      This conduct, too, renders Judge Letts unable to see this

18 case through to completion.  If Judge Letts were to preside over

19 a trial and sentencing in the case, the validity of the result

---

government "will prove, I think . . . because they do it every time –
they don't bring on cases that they can't prove the element[s]"); 3/1
Tr. 37 (the government "pled it in a way that maximized the chance
that you could and would get a guilty verdict"); 3/1 Tr. 73 (telling
defense counsel,"[i]f the clients were found to be not guilty, I think
there would be an appeal on that fact . . . . I don't think you could
ever win at that").

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

[42]See 3/1 Tr. 32-33 (based on "business logic," drivers get "more
money," so Judge was "surprised at the assumption that they . . .
would get equal treatment at the Government's hands"); id. at 32 ("I
was at least skeptical that the driver was going to get the same
deal that everybody else was.").

1    would be questioned because Judge Letts' intervention into plea

2    negotiations could be argued to have prevented some defendants

3    from receiving and accepting government offers for more

4    advantageous resolutions.  A trial conviction would also be

5    attacked on the theory that the trial and sentence were

6    undermined by Judge Letts' resentment at the offender's

7    unwillingness to plea, see Bruce, 976 F.2d at 557 ("judicial

8    participation in plea discussions that ultimately fail inherently

9    risks the loss of a judge's impartiality during trial, . . .

10   because he may view unfavorably the defendant's rejection of the

11   proposed agreement"), or because Judge Letts' premature

12   conclusion about defendants' factual guilt deprived them of a

13   fair trial, compare Montiel v. Los Angeles, 2 F.3d 335, 343-44

14   (9th Cir. 1993) (reassigning case where judge's comments showed

15   predisposition to doubt the veracity of a party's claims).[43]

16

17   [43]In addition to his comments indicating that he has prejudged the
     defendants' guilt and relative culpability, Judge Letts has expressed
18   premature judgments on other issues in the case, including the non-
     admissibility of expert law enforcement testimony and the lack of
19   veracity of cooperating witnesses.  See 3/1 Tr. 20 ("There will not be
     experts in this case"); id. at 21 ("I don't, right now, see any way
20   that an expert could testify").  See also ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22   ▮▮▮▮▮ ; 3/1 Tr. 40 (saying, generally, if "you[] . . . have a trial in
     this case," then "I can almost tell you in advance you
23   have trouble getting the evidence in."); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ).  See also ▮▮▮▮▮▮▮▮
24   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ 3/1 Tr. 56 ("there's a
     hammer on these guys to see if they can't get to say things that are
25   not true about other people"); Klein Decl. ¶ 10.  These statements
     came before any proffer of particular testimony, or any motion to
26   exclude such testimony, was before the Court.  Although the Judge has
     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28
     its expert witness before he has seen the expert's qualifications or
     proffered testimony, and he has similarly prejudged any cooperating

25

1    At the same time, any guilty plea presided over by Judge
2  Letts could be attacked with an argument that he coerced the plea
3  by pressuring the defendant to plead guilty and his lawyer to
4  advise that plea.  See, e.g., Bruce, 976 F.2d at 556 (vacating
5  guilty plea after judicial participation in plea negotiation;
6  such participation "inevitably carries with it the high and
7  unacceptable risk of coercing a defendant to accept the proposed
8  agreement").[44]

9    In short, Judge Letts' Rule 11 violations will cast a cloud
10 over everything that follows in his courtroom.

11    ***3.   The Need for Recusal.***  Not every Rule 11 violation
12 requires reassignment to a new judge.[45]  Often, however,
13 reassignment is necessary.  See United States v. Miles, 10 F.3d
14 1135, 1142 & n.10 (5th Cir. 1993) (noting appellate decisions
15 that have "mandated that when a sentence is vacated for judicial
16 participation [in plea negotiations], the case should be assigned
17 to a different district judge").  The reason Rule 11 bars
18 judicial interference in plea negotiations is "to preserve the

19
20 witness the government might offer.

21    [44]See also United States v. Furst, 886 F.2d 558, 579-83 (3d Cir.
   1989) (ordering recusal from sentencing after trial because of judge's
22 earlier comments about the desirability of a plea).  The government
   has standing to seek recusal for Judge Letts' comments expressing
23 anger at the defendants under Pashaian v. Eccelston Prop., Ltd., 88
   F.3d 77 (2d Cir. 1996).  See id. at 83 (a "party has standing to
24 challenge [a] judge's refusal to recuse even if the alleged bias would
   be in the moving party's favor," because "[s]uch a party might
25 legitimately be concerned that the judge will 'bend over backwards' to
   avoid any appearance of partiality, thereby inadvertently favoring the
26 opposing party").  The government also has standing to seek recusal
   for Judge Letts' violations of defendants' rights, because those
27 violations render any convictions vulnerable to later appeal.

28    [45]Compare United States v. Garfield, 987 F.2d 1424, 1427 (9th Cir.
   1993) (no ineffective assistance in counsel's failure to request
   recusal after judicial participation in plea bargain).

26

1  judge's impartiality <u>after</u> the negotiations are completed."

2  <u>Bruce</u>, 976 F.2d at 557 (emphasis in original).  "[P]articipation

3  in plea discussions that ultimately fail inherently risks the

4  loss of a judge's impartiality during trial."  <u>Id.</u>  The Ninth

5  Circuit has approvingly quoted the view that "'[i]t is highly

6  unlikely that the judge could preside over a trial impartially

7  under such circumstances.'"  <u>Id.</u> at 557 n.4.  Because, under

8  <u>Bruce</u>, it is "highly unlikely that the judge could preside over a

9  trial impartially" where a party has rejected the court's

10 suggestion about how to plea bargain, Judge Letts' actions at the

11 very least establish doubt about his impartiality.  That is

12 enough, under the statute, to require recusal.  <u>See</u> p. 14 & n.28,

13 <u>supra</u>.[46]

14     <u>United States v. Barrett</u>, 982 F.2d 193 (6th Cir. 1992), is

15 directly on point.  There, as here, a judge, speaking with

16 counsel and without the defendant present, commented on the

17 merits of the case and the likelihood of conviction.  <u>Compare</u>

18 <u>Barrett</u>, 982 F.2d at 194 (saying he did not see "what defense

19 [the defendant] has"), <u>with</u> p. 23-24 n.40, <u>supra</u> (Judge Letts'

20 statements on likelihood that <u>Perez</u> defendants will be found guilty);

21 3/1 Tr. 63 ("nobody has told me what you're going to defend yourself

22 with").  There, as here, the judge not only discussed sentencing,

23 but predicted that he would depart from the guidelines.  <u>Compare</u>

24

25     [46]Judge Letts' clearly expressed disdain for both the Sentencing
26 Guidelines and the applicable mandatory minimum, <u>see</u> p. 16 n.29,
   <u>supra</u>, further justify recusal.  <u>See</u>, <u>e.g.</u>, <u>United States v. Snyder</u>,
27 235 F.3d 42, 46-48 (1st Cir. 2000); <u>United States v. Langmade</u>, 125 F.
   Supp. 2d 373, 374-75 (D. Minn. 2001) (recusing, because judge believed
28 it "unconscionable and patently unjust" to impose mandatory minimum,
   and felt "so embittered by" the government's insistence on that
   sentence that judge "could not be impartial upon resentencing").

1 <u>Barrett</u>, 982 F.2d at 194 (judge "solicited and received

2 information about the range of sentences being discussed" and

3 said his sentence was likely to "'exceed the guidelines'"), <u>with</u>

4 2/22 Tr. 32 ("I'll depart.  You can count on that.");

5 ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

6 ▋▋▋▋▋▋▋▋▋▋▋▋.  In <u>Barrett</u>, notwithstanding the judge's

7 statements that he was not trying to coerce a plea and that he

8 would "not punish [the defendant] for going to trial," the Court

9 of Appeals found a violation of Rule 11.  <u>Barrett</u>, 982 F.2d at

10 193-94.  "To cure this improper judicial participation in the

11 plea bargaining process," <u>Barrett</u> held, the "case must be

12 assigned to another judge."  <u>Id.</u> at 196.  <u>See also</u> <u>United States</u>

13 <u>v. Corbitt</u>, 996 F.2d 1132, 1135 (11th Cir. 1993) (following

14 <u>Barrett</u>); <u>United States v. Cano-Varela</u>, 497 F.3d 1122, 1134 (10th

15 Cir. 2007) (same); <u>United States v. Bradley</u>, 455 F.3d 453, 465

16 (4th Cir. 2006) (same); <u>Miles</u>, 10 F.3d at 1142 & n.10.

17     Here, moreover, Judge Letts not only has sought to dictate

18 the terms of any plea, but also explicitly stated that he will

19 "remember" any unwillingness of the government to go along with

20 those terms and may impose sanctions on government attorneys who

21 propose pleas that do not accord with his views.[47]  The threat of

22 ————————————————

23     [47]<u>See</u> p. 8, <u>supra</u> (describing threat of sanctions).  The
   government has reason to fear that, although such sanctions would be
24 baseless under the law, the threat is not idle.  <u>See</u> <u>Gillen v. Gates</u>,
   1995 WL 329610, at *5-6 (9th Cir. 1995) (unpublished) (reversing Judge
25 Letts' sanctions against city attorney in police brutality case,
   because Judge imposed sanctions where record showed no bad faith);
26 <u>852152 Ontario, Inc. v. Dollar Sys., Inc.</u>, 1994 WL 88784, at *2 (9th
   Cir. 1994) (unpublished) (reversing Judge Letts' imposition of
27 sanctions where "there is absolutely no evidence or even implication
   of bad faith"); <u>United States v. Kelly</u>, 1993 WL 539266 (9th Cir. 1993)
28 (unpublished) (reversing Judge Letts' imposition of sanctions in the
   absence of bad faith); <u>Cal. Med. Ass'n v. Shalala</u>, 207 F.3d 575, 578
   (9th Cir. 2000) (reversing Judge Letts' conclusion that appeal was

1  sanctions causes a significant chilling effect on the

2  government's conduct of this case, and "[t]he impartiality of a

3  judge who makes such statements may reasonably be questioned,

4  whether or not the judge planned to carry through." <u>Edgar v.</u>

5  <u>K.L.</u>, 93 F.3d 256, 261 (7th Cir. 1996) (granting mandamus and

6  requiring recusal where, <u>inter alia</u>, judge said lawyers "would be

7  in 'deep doo' if the motion for disqualification failed").

8  "Litigants are entitled to a fair trial and a perception that the

9  presiding judge does not possess a bias that will affect rulings

10 during trial." <u>Montiel</u>, 2 F.3d at 344.  Having created the

11 appearance that he may not be impartial in the case, Judge Letts

12 no longer may preside over it.  He should be recused.

13 **II.   THE RISK OF PREJUDICE IS INCREASED BY THE JUDGE'S SECRET,**
        ***IN CAMERA* HEARINGS, HIS VOCAL DISREGARD FOR NINTH CIRCUIT**

14      **CONTROL, AND HIS INSISTENCE ON *EX PARTE* CONTACTS**

15      The appearance of partiality is increased by the unorthodox

16 procedures Judge Letts has employed in the case.  His insistence

17 on <u>in camera</u> hearings and <u>sua sponte</u> sealed transcripts creates

18 the impression of trying to shield his work from public scrutiny.

19 His repeated statements that his law will control, rather than

20 precedent from higher courts, raises the appearance that he

21 intends to rule based on his preferences rather than the law – a

22 fear reinforced by his attempt, in negotiations, to secure a

23 waiver of the government's appellate rights.

24

25 _____

26 undertaken for vexatious purposes and delay; Judge Letts had found
   appeal vexatious after the appeal successfully reversed his judgment).
   Per Ninth Circuit Rule 36-3(c)(ii), the unpublished cases are cited
27 not as legal precedent, but rather for the "factual purpose[]" of
   showing the government is on notice that the judge at issue has
28 imposed sanctions before in circumstances not meriting sanctions – a
   fact heightening the chilling effect of the Court's threat to impose
   sanctions.

                                    29

**A.**  Although the Judge conducted several lengthy hearings in the case, almost all took place in chambers, out of public view. Transcripts of two hearings were sealed without the parties' request and for no apparent reason.  (Dkt. Nos. 60, 68). Conducting ordinary judicial business in secret, without special cause, raises the risk of bias because it shields missteps from public view.  See Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606 (1982) ("Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole.").  Reliance on "informal" conferences (Dkt. Nos. 59, 68, 84) heightens the risk of error,[48] and increases the likelihood of improper ex parte contacts.[49]  Indeed, by insisting that the government pre-clear its substantive filings with his staff, the Judge has ordered the AUSA to engage in ex parte contacts that would violate Rule 11[50] and California Bar rules.[51]  Moreover,

---

[48]See, e.g., FTC v. Enforma Natural Prods., Inc., 362 F.3d 1204, 1214 (9th Cir. 2004) (reversing Judge Letts' preliminary injunction where he improperly relied on information from informal conference).

[49]See, e.g., United States v. Levy, 390 F. App'x 726, 727 (9th Cir. 2010).  In Levy, both the government and the defense agreed that Judge Letts had engaged in improper ex parte contact by taking steps to speak with an AUSA to discuss restitution when the AUSA had called regarding scheduling matters.  See Br. of United States in United States v. Levy, No. 09-50656 (9th Cir.), available at 2010 WL 5857467, at *12-13; Br. of Def.-App., available at 2010 WL 5857466, at *17-18 & n.1.  While rejecting the defendant's claim of bias, the Ninth Circuit said that if the ex parte contact happened the way both parties alleged, then it was "improper."  390 F. App'x at 728.

[50]See United States v. Kraus, 137 F.3d 447, 456 (7th Cir. 1998). In Kraus, after the court rejected one agreement, the prosecutor conferred with a clerk about whether a new sentencing cap would be acceptable to the Court.  The Court of Appeals found the conversation "improper," because "[i]nviting an employee of the court to speculate on how the judge might react to a particular request or proposal is . . . no more proper than asking the judge herself to so speculate."

because papers to which the staff objected would never get filed under such a regime, this practice would effectively shield the Judge's decisionmaking from review.  This attempt to have his staff engage in off-the-record, possibly <u>ex parte</u> contacts to communicate the Judge's views on substantive issues of law is in itself enough to justify recusal.

   ***B.***   The Judge's statements have conveyed to the parties the impression that he will not try to avoid committing reversible error, because he intends to be governed by his personal notion of justice rather than by binding law.  Repeatedly calling

████████████████████████████████████████████████████

████ [53]   He has said that he persists in error on remand

────────────────

<u>Id.</u>  <u>Kraus</u> found impropriety where there was no evidence the judge knew about the clerk's communications.  <u>Id.</u> at 456 & n.9.  Here, Judge Letts is requiring the same <u>ex parte</u> contact that <u>Kraus</u> forbade: to have "the terms of an inchoate plea agreement . . . floated" to the clerk, such that "only after a favorable response was received [would] the parties finalize their agreement and initiate a Rule 11 hearing." <u>Id.</u> at 456.  <u>See</u> <u>generally</u> Part I, <u>supra</u>.

   [51]<u>See</u> Calif. Rule of Professional Conduct 5-300(B), (C).

   [52]████████████████████████████████████████;
2/22 Tr. 4 ("I was the most overruled person in this court, probably in the entire country").  <u>See</u> <u>also</u> nn.53-54, <u>infra</u>.

   [53]____████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

1   ██████████████████████████ [54] – a worrisome statement given his

2   prediction that the case will be on appeal for years if it does

3   not plead out.[55]  He has said he will not even try to avoid

4   reversible error:

5           [Y]our job is to deal with these people

6               according to the law.

7           Who makes the law?

8           Me.

9           Appeal it, then you win.  I'll be gone.

10              I don't care.

11   3/1 Tr. 70.[56]

12

13

_____

14   [54] ████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████

20       [55]In March, the Judge said that, in light of the parties'
    inability to "talk things out," "this case will be on appeal for

21   years" – "on appeal until the next generation."  3/1 Tr. 52-53.  See

22   also id. at 75 ("This case will last years if it doesn't get cleaned
    up by you guys"); id. at 68 ("what you're doing is you're setting up a

23   case that's going to take ten years if you're not careful"); id. at 75
    ("I will have amicus curiae.  That will take forever.").  These

24   warnings were intended to pressure the parties into settlement – the
    last comment was immediately followed by a statement that "if [the

25   case is] handled . . . right today" then "it won't raise any of those
    issues, and we'll just have it done."  Id. at 75-76.

26
    [56] ____ _____ ██████████████████████████████████████████████.

27   2/22 Tr. 43 (while rejecting plea agreement: "it may well be that I
    will be again the most reversed judge in the entire country"); 3/1 Tr.

28   64 ("if somebody throws out this case because I didn't do right, well,
    then let them throw it out and I won't feel too badly for you").

                                    32

He has voiced skepticism not merely about the law's clarity on particular points, but about the idea that there could be binding precedent on anything.[57]  While saying there is "no law" to restrain him, he has also said that ████████████.  See 2/22 Tr. 4 ("There is no law about that.  There is no law on anything."); █████████████████████████████████████.  Rather than view the law as an outside force constraining his behavior, Judge Letts has communicated that only his prior decisions in other cases are binding law.[58]

    *c.*  Judge Letts compounds the appearance of bias through his strong disagreement with the notion that the government might protect its rights by appealing adverse decisions.  See, e.g., ███████████.  He has stated that the parties should simply take what he is offering and agree not to appeal, in order to resolve the case faster.  See 3/1 Tr. 10 ("If nobody is going to appeal it, that's the end of it.").

████████████████████████████████████████████████████████

----

[57]Judge Letts has repeatedly said that the Ninth Circuit has no defined law.  See, e.g., 3/1 Tr. 80 ("nobody is ever going to be able to defend that in a circuit this big with that many judges that you can produce law that will make sense to people."); ███████████████████████████████████████████████████████████████████.  Indeed, when one defense attorney pointed out that Ninth Circuit law required certain elements to be met for a conspiracy plea, Judge Letts asked the incredulous lawyer, "Do you think there is a Ninth Circuit?"  3/1 Tr. 23.

[58]████████████████████████████████████████████████).  For instance, he has said that the government will be sanctioned for filing legally permissible papers if Judge Letts' prior cases would show he would dislike them.  See 2/22 Tr. 27 (in plea hearing, saying "[y]ou will be sanctioned if . . . you have anything like this [on issues where] I am clearly on the record" in other cases).

33



1/27 Tr. 13-14; <u>see</u> <u>also</u> p. 2 n.2, <u>supra</u> (quoting similar statements).[59]  Indeed, Judge Letts rejected the Treto plea agreement, in part, because it allowed the government to appeal a sentence below the statutory minimum.  <u>See</u> pp. 10, 20, <u>supra</u>; <u>see</u> <u>also</u> 2/22 Tr. 39 (telling government "They're only going to find it if you appeal it.  And you're going to agree not to.").

It is one thing for the parties to negotiate appellate waivers where they believe the bargain to be in their interest; it is quite another for a judge to insist on waivers, <u>ex</u> <u>parte</u> contacts, and hidden proceedings because he does not like being reversed.  Because Judge Letts has simultaneously advertised his disregard for binding law, tried to shield his actions from scrutiny, and tried to force the government to give up its

---

[59]

1  appellate rights, a reasonable observer could question whether he
2  intends to follow the law.  Section 455 thus requires recusal.

3  **III. RECUSAL IS THE BEST SOLUTION**

4       The government does not raise these concerns lightly.  But
5  it is forced to in this case.  If bias is bad, bias that cannot
6  be corrected is worse.  When a defendant is acquitted, there is
7  almost no way to correct even blatant trial error, because the
8  government cannot appeal.  Bias against the government in a
9  criminal case therefore must be corrected by recusal – for there
10 is no way to cure the resulting errors later.  See In re United
11 States, 158 F.3d 26, 30 (1st Cir. 1998) (mandamus review is
12 especially proper for denial of government's motion to recuse
13 judge for bias in a criminal case, because "a defendant's verdict
14 will terminate the case, thereby rendering the usual remedy, end-
15 of-case appeal, illusory").

16      In ordering Judge Letts recused, this Court need not
17 conclude that he is actually biased.  "[W]hat matters is not the
18 reality of bias or prejudice but its appearance."  Liteky v.
19 United States, 510 U.S. 540, 548 (1994).  "[A]ny doubts must be
20 resolved in favor of recusal."  United States v. Patti, 337 F.3d
21 1317, 1321 (11th Cir. 2003); see p. 14 n.28, supra (citing
22 cases).  Based on the record in this case, this Court should find
23 the appearance-of-bias standard met, even if it believes Judge
24 Letts to be personally unbiased.[60]

25

26      [60]See In re Boston's Children First, 244 F.3d 164, 171 (1st Cir.
   2001) (emphasizing, in appellate court's order recusing district
27 judge, that "this ruling in no way intimates any actual bias or
   prejudice on the part of" the judge); United States v. Isaacs, No. 07-
28 732, 2008 WL 4346780, at *2 (C.D. Cal. Sep. 19, 2008) (ordering
   recusal: "the question before us is not whether [the judge] had any
   actual bias, . . . but whether a reasonable person . . . would

35

1    Finally, while the benefits of recusal are high (in that
2    recusal would remove the appearance of impropriety and allow the
3    parties to pursue either pleas or trials free of the taint of the
4    Court's previous Rule 11 violations), the cost is low.  Because
5    of Judge Letts' insistence against filing motions in the case, no
6    motions have been filed or decided.  Because Judge Letts has said
7    that his management of the case will take "years," <u>see</u> p. 32 &
8    n.55, <u>supra</u>, recusal will speed the case's disposition rather
9    than delay it.  And no "rule of necessity" applies; another judge
10   can be found to take his place.[61]

11   When Congress broadened Section 455 by requiring recusal
12   where a judge's impartiality is open to question, its purpose was
13   to "'promote public confidence in the integrity of the judicial
14   process.'"  <u>Nichols v. Alley</u>, 71 F.3d 347, 350 (10th Cir. 1995)
15   (quoting <u>Liljeberg v. Health Servs. Acquisition Corp.</u>, 486 U.S.
16   847, 858 n.7 (1988))).  Fulfilling that goal here requires
17   recusal.

18
19
20   _____

21   conclude that his impartiality might reasonably be questioned"),
     <u>aff'd</u>, 359 F. App'x 875 (9th Cir. 2009).  Even if Judge Letts'
22   comments aimed at educating counsel about better ways of achieving
     justice, "the primary function of a judge is neither to 'educat[e] the
23   bar' nor to 'improve the practice of the law.'"  <u>United States v.</u>
     <u>Whitman</u>, 209 F.3d 619, 625-26 (6th Cir. 2000) (reassigning case where
24   a "district judge's lengthy harangue . . . had the unfortunate effect
     of creating the impression that the impartial administration of the
25   law was not his primary concern").

26       [61]<u>See</u> <u>Nichols v. Alley</u>, 71 F.3d 347, 352 (10th Cir. 1995)
     (requiring recusal after weighing the appearance of partiality against
27   the "relative ease" of replacing the trial judge from the "very large
     pool of judges" available as substitutes).  While cases from an
28   earlier era had sometimes referenced a "duty to sit," the 1974
     amendments to Section 455 removed that doctrine from the statute.  <u>See</u>
     H.R. Rep. 93-1453, 1974 U.S.C.C.A.N. 6351, 6355.

1

**CONCLUSION**

2      For the reasons given above, Judge Letts should be recused,

3 and the case should be reassigned.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

37

**DECLARATION OF**
**ASSISTANT UNITED STATES ATTORNEY JOSHUA A. KLEIN**

I, Joshua Klein, hereby state and declare as follows:

1.  I am an Assistant United States Attorney ("AUSA") in the Central District of California, and am currently assigned to represent the government in <u>United States v. Saul Perez, et al.</u>, Case No. CR 11-1238-JSL.

2.  Because I was not yet assigned to the <u>Perez</u> case by January 10, 2012, I was not at that date's hearing in the case. However, I have spoken with the AUSA who was assigned at that time, Melissa Mills.  AUSA Mills has reported to me that she attended the hearing.  According to AUSA Mills, the defendants and counsel assembled in Judge Letts' courtroom.  Judge Letts came out and addressed the defendants not from the bench, but from the podium, in a speech that is not included in the transcript of the January 10, 2012, proceedings.  Judge Letts' speech included an announcement that he wished the proceedings to continue in his chambers.  The proceedings then moved to chambers, without the defendants, and the further proceedings are contained in the transcript for that date.

3.  I was assigned to the case shortly after the January 10, 2012, hearing.

4.  On February 12, 2012, I electronically filed with the Court a plea agreement that the government had entered into with defendant Samuel Treto, Jr.  A true and correct copy of the agreement is attached hereto as <u>Exhibit E</u>.  From my own experience, and from speaking with more experienced AUSAs in my office, I know that the terms in this agreement – and

1

particularly the notice of penalties, the exceptions to
government allocution restrictions, the warning and agreement
about immigration consequences, and the limited mutual waiver of
appeal – are commonplace and frequent provisions that are in
agreements regularly filed in this district.

    5.   After the plea agreement had been filed, I emailed Ms.
Nancy Webb, the courtroom deputy clerk for Judge Letts, in order
to set a date for the change-of-plea hearing.  During or after
these discussions, Ms. Webb and I spoke by phone.  She told me
that Judge Letts was not going to like certain things in the
agreement – particularly the mandatory minimums and the appellate
waiver provisions.  She urged me to discuss the subject with
Debra Herzog, a Special AUSA ("SAUSA") in our office.

        a.   When I spoke with SAUSA Herzog after my
             conversation with Ms. Webb, SAUSA Herzog told me that,
             prior to a plea hearing scheduled before Judge Letts in
             one of SAUSA Herzog's cases, Ms. Webb had advised the
             parties that Judge Letts would have a problem with
             certain provisions in the agreement.  After discussing
             the matter, SAUSA Herzog and the defense attorney
             agreed to remove the provisions.

        b.   Before writing this declaration, I have
             reviewed the plea agreement to which SAUSA Herzog
             referred and have had a follow-up conversation with
             her.  The plea agreement Ms. Webb was referring to was
             filed by SAUSA Herzog in <u>United States v. Michelle
             Woodard</u>, CR 11-1106-JSL.  The docket for that case
             shows two plea agreements – an original agreement,

2

1    filed November 17, 2011; and an amended plea agreement,
2    filed on January 19, 2012, the date of the plea.  SAUSA
3    Herzog has told me that, before the change-of-plea
4    hearing started on January 19, Judge Letts' courtroom
5    deputy clerk, Ms. Webb, came to the parties and
6    explained that the Judge had problems with certain
7    provisions in the original agreement: (i) the provision
8    in Paragraph 3(d) allowing the government to vary from
9    its sentencing recommendation if the Judge made a
10   Guideline departure; (ii) the provision in Paragraph 5
11   allowing restitution for all relevant conduct and for
12   charges not prosecuted in the agreement; and (iii) the
13   provision in Paragraph 16 containing the government's
14   limited waiver of appeal regarding sentencing.  SAUSA
15   Herzog told me that the parties responded to this
16   announcement by striking the offending sections and
17   initialing the changes.  The Judge then came into the
18   courtroom, took the plea, and praised the parties for
19   cooperating on the changes.  My review of the amended
20   plea agreement that was filed the day of the plea entry
21   shows that those three provisions SAUSA Herzog alluded
22   to were stricken and the changes initialed.

23   6.  After my communications with Ms. Webb in the <u>Perez</u> case,
24   the change-of-plea hearing for defendant Treto was set for
25   February 22, 2012.  Either in the days before the hearing, or on
26   the morning of the hearing, Ms. Webb asked me again whether I had
27
28

3

spoken with SAUSA Herzog, and whether I had taken care of the parts of the agreement that were going to be disagreeable to the Judge.

7. On February 22, 2012, I assembled in Judge Letts' courtroom along with defendant Treto, and defendant Treto's counsel David M. Philips. Judge Letts did not come into the courtroom. Instead, Ms. Webb said that the Judge's law clerks would come out to speak to us. The Judge's two law clerks came into the courtroom for an untranscribed conversation with me and Mr. Philips. One of the law clerks, Ms. Kim Nakamaru, did most of the speaking. She said the Judge had not had a chance to review the agreement yet, but that she was going to point out certain provisions that Judge Letts would have a problem with. She proceeded to do so.

8. Mr. Philips and I did not alter the agreement in response to Ms. Nakamaru's statements. Instead, we were summoned into chambers to meet with Judge Letts, in the discussion that is contained in the transcript for that date.

9. On March 30, 2012, I received an email from deputy courtroom clerk Nancy Webb, on behalf of Judge Letts, in which Judge Letts asked the parties to set a meeting "as soon as possible," because "[b]ased on our meetings and my review of the transcripts[,] it seems that this case should have been disposed of by now." A true and correct copy of that email is included in the emails attached hereto as Exhibit F.

10. SAUSA Herzog has told me that, on April 2, 2012, Judge Letts' courtroom deputy clerk, Ms. Webb, called SAUSA Herzog's cell phone number, saying that Judge Letts wanted to speak with

4

her.  My understanding of the conversation is based on my

discussion with SAUSA Herzog, as well as my review of a

memorandum by SAUSA Herzog, dated April 3, 2012.  At the time of

the call, SAUSA Herzog did not have any cases pending with Judge

Letts.  Accordingly, she told Ms. Webb she would speak with him

on the phone.  Judge Letts then got on the phone.  He spent some

time apparently looking for a three-page memorandum from Attorney

General Holder, which he was unable to find.  He said that he had

various cases before him involving cooperation agreements, and

that in his opinion they were all illegal.  He then asked if she

would be in the office the next day, because he could want to

speak with her again.  Towards the end of what her phone showed

to be a 26-minute conversation, Judge Letts said he wondered

about her conversation with another AUSA.  Judge Letts referred

to the other AUSA by a name that did not match any AUSA's name in

the office.  Because the name sounded similar to Josh Klein, and

because SAUSA Herzog was aware of my prior conversation with her

in February, she concluded he must be talking about me.  Judge

Letts told her he wondered if she would be comfortable talking

about it further, and that he would call her the next day if she

was.  According to SAUSA Herzog, Judge Letts has not called back.

DOCUMENTS

    11.  Attached hereto as Exhibit A is a true and correct copy

of the transcript of the January 10, 2012, proceedings filed in

this case.

    12.  Attached hereto as Exhibit B is a true and correct copy

of the transcript of the January 27, 2012, proceedings filed in

this case.

5

13.   Attached hereto as <u>Exhibit C</u> is a true and correct copy of the transcript of the February 22, 2012, proceedings filed in this case.

14.   Attached hereto as <u>Exhibit D</u> is a true and correct copy of the transcript of the March 1, 2012, proceedings filed in this case.

15.   Attached hereto as <u>Exhibit E</u> is a true and correct copy of the plea agreement with defendant Samuel Treto, Jr., filed in this case on February 16, 2012.

16.   Attached hereto as <u>Exhibit F</u> are true and correct copies of certain emails received from the Honorable J. Spencer Letts during the pendency of this case.

<u>POSITION OF OPPOSING COUNSEL</u>

17.   I have spoken today with counsel for all four defendants in this case.  They have each informed me that they do not oppose the government's motion for recusal.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: April 11, 2012

JOSHUA KLEIN
Assistant United States Attorney

6